IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BELLA MONTE OWNERS ASSOCIATION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> VIAL FOTHERINGHAM, LLP, <br><br> Defendant. | ORDER AND MEMORANDUM DECISION <br><br><br> Case No. 2:19-cv-00212 |

Beginning in 2015, Defendant Vial Fotheringham, LLP, represented Plaintiff Bella Monte Owners Association, Inc. ("Bella Monte") in a construction defect lawsuit in Utah state court. As part of that action, Bella Monte's expert was prepared to testify that Bella Monte had suffered approximately $7 million in damages. But in July 2018, the court ordered that this evidence be excluded from the trial as a sanction for Bella Monte's failure to disclose a damages estimate earlier in discovery.

Bella Monte settled the underlying action for $500,000 and then filed this lawsuit against Vial Fotheringham for legal malpractice. The case was removed to this court on April 1, 2019.

Bella Monte now moves for partial summary judgment. (ECF No. 41.) First, Bella Monte seeks summary judgment of two of Vial Fotheringham's affirmative defenses. For the reasons stated below, this part of the motion is granted. Bella Monte also moves for summary judgment of the breach and causation elements of its legal

malpractice claim. Because Vial Fotheringham has successfully raised triable issues of material fact regarding these issues, summary judgment of these elements is denied.[1]

## BACKGROUND

Bella Monte is the homeowners association for a condominium development in Draper, Utah.  In 2015, Bella Monte hired the law firm Vial Fotheringham to represent it in a lawsuit against numerous general contractors and subcontractors (the "Contractors") for alleged construction defects in the condominiums.  The lawsuit was filed on October 5, 2015.  (Ex. D to Mot. Summ. J. (ECF No. 41-6).)

On January 12, 2016, Vial Fotheringham served initial disclosures on behalf of Bella Monte.  (Ex. F to Mot. Summ. J. (ECF No. 41-8).)  The disclosures did not include any estimates regarding Bella Monte's damages, but did include a copy of a pre-litigation report produced by Alliance Engineers (the "Assessment"), which identified problems in the stucco, stone veneer, vinyl windows, elevated decks and landings, and concrete hardscape at the condominiums.  (Assessment at 4, Ex. C to Mot. Summ. J. (ECF No. 41-4).)  The Assessment concluded that there were "widespread construction defects on 100% of the building and units at the Bella Monte Condominiums," and that further "exploratory testing" would be necessary to "create a 'scope of work' document with specifications for building repairs."  (Id. at 3.)  Once that was finished, Bella Monte could "solicit bids from qualified contractors" to begin reconstruction.  (Id.)  Aside from these statements, the Assessment did not include any other estimates regarding the cost of repairing the defects.

---

[1] On April 3, 2020, Bella Monte filed a Request for Oral Argument regarding its summary judgment motion.  (ECF No. 69.)  The court has carefully considered this request, but pursuant to General Order 20-009 for the District of Utah, only limited hearings are currently permitted due to the COVID-19 pandemic. Rather than significantly delay resolution of this motion, the court has concluded that it may be decided on the briefs without a hearing.  See DUCivR 7-1(f).

One year later, on February 13, 2017, Vial Fotheringham served responses to the Contractors' first set of interrogatories. Among other things, Vial Fotheringham responded to an interrogatory about the amount of damages by writing, "The scope and cost of repair[s] are currently being determined and calculated by experts retained by the Association. A report detailing their findings will be produced at the appropriate time. Plaintiff reserves the right to supplement any part of this answer as more information becomes available." (Interrogatory Responses at 6-7, Ex. I to Mot. Summ. J. (ECF No. 41-11).)

On May 31, 2017, the Contractors' counsel sent Vial Fotheringham an email that stated, "our carrier is requesting information regarding any preliminary cost to repair estimates you have generated." Vial Fotheringham did not respond. Counsel sent another email on September 26, 2017, asking if Vial Fotheringham had "any updated versions of plaintiff's preliminary expert reports." Vial Fotheringham responded, "We don't have anything else right now." (Ex. 2 to Peterson Decl., attached as Ex. H to Mot. Summ. J. (ECF No. 41-10).)[2]

The cut-off date for fact discovery in the underlying action was March 13, 2018. (Ex. J to Mot. Summ. J. (ECF No. 41-12).) On March 15, the Contractors' attorney emailed Vial Fotheringham to discuss the disclosure of expert reports. She notes that the Contractors "did not receive a computation of damages during fact discovery (unless I am missing something)," which made it impossible for the general contractors to determine

---

[2] Vial Fotheringham objects to consideration of documents attached to the Peterson Declaration based on Rule 106 of the Federal Rules of Evidence. Under that rule, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. It is not clear how this rule applies here. It appears Bella Monte has already introduced the entire writing. To the extent Bella Monte only introduced a part of the writing, nothing prevented Vial Fotheringham from introducing the remainder of the writing in its opposition. Accordingly, this objection is overruled.

how best to allocate damages among the various subcontractors. She proposed staggering expert disclosures so that Bella Monte's report would be released first. She also asked whether there was any need to extend the fact discovery cut-off date, because one last fact deposition was still incomplete. (Ex. 3 to Peterson Decl.) Vial Fotheringham responded that it would not agree to "any additional extensions of the case management deadlines" and that the one remaining deposition could be completed without "a stipulated extension of the fact discovery deadline." (Id.) A few hours later, Vial Fotheringham wrote another email, stating, "I don't have an issue with the staggering of expert disclosures if we can do it without delaying the trigger for getting a trial date." (Ex. 13 to Opp'n (ECF No. 58-13).)

The next day, March 16, Vial Fotheringham sent the Contractors a draft of their expert's report, which estimated that Bella Monte's damages would be about $6 million. In the email accompanying the draft report, Vial Fotheringham wrote, "This proposal is preliminary only, and provided solely in the context of mediation/settlement discussions." (Id.)

On April 9, 2018, the Contractors filed a Rule 37 Motion to Preclude Evidence or Argument Regarding Damages at Trial. (Rule 37 Mot., Ex. G to Mot. Summ J. (ECF No. 41-9).) The motion requested that Bella Monte be prohibited from submitting this expert evidence, due to its failure to provide an estimate of damages in its initial disclosures or in response to the Contractors' interrogatories. Bella Monte, through Vial Fotheringham, opposed the motion, arguing that there had been no way to provide an estimate earlier in the case because their investigation into the scope of defects was ongoing throughout the litigation. (Rule 37 Opp'n, Ex. 16 to Opp'n (ECF No. 58-16).)

On April 24, 2018, Vial Fotheringham sent the Contractors an amended expert report, which increased the damage estimate to over $7 million. (Ex. L to Mot. Summ. J (ECF No. 41-14).) On June 5, 2018, the Contractors served their own expert report, which estimated that damages were approximately $320,000. (Ex. 21 to Opp'n (ECF No. 58-21).)

On July 6, 2018, Judge Andrew Stone granted the Contractors' motion to exclude Bella Monte's expert report. He concluded that Bella Monte had failed to comply with the initial disclosure requirements imposed by Rule 26 of the Utah Rules of Civil Procedure. (Memorandum Decision ("Memo. Dec.), Ex. E to Mot. Summ. J. (ECF No. 41-7).) On July 13, 2018, Vial Fotheringham informed Bella Monte of the decision, calling it "baffling and illogical" and recommending that it be appealed. (Ex. 18 to Opp'n (ECF No. 58-18).) A few weeks later, Vial Fotheringham sought to reassure Bella Monte about the scope of damages, explaining that the expert reports were "for purposes of litigation and settlement leverage. The 'real world' repairs to be made are less extensive, and will be less costly if put out for competitive bids to local contractors." (Ex. 19 to Opp'n (ECF No. 58-19).)

Instead of appealing Judge Scott's order, Bella Monte settled the action with the Contractors for $500,000 on October 22, 2018. (Ex. 20 to Opp'n (ECF No. 58-20).) Bella Monte then brought this legal malpractice action against Vial Fotheringham, arguing that Vial Fotheringham's failure to comply with the disclosure requirements of the Rule 26 had damaged Bella Monte in the amount of approximately $7 million.

# LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation omitted)).

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893-94 (10th Cir. 2019) (internal quotation omitted). Should the nonmovant bear the burden of persuasion at trial, "[t]hese facts must establish, at a minimum, an inference of the presence of each element essential to the case." Id. (quoting Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137 (10th Cir. 2016)).

When evaluating a motion for summary judgment, the court must view the facts and draw all reasonable inferences in favor of the non-moving party. Tabor, 703 F.3d at 1215. But this is only true insofar as "there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986)).

# ANALYSIS

"In a legal malpractice action, a plaintiff must plead and prove (i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." Crestwood Cove Apartments Bus. Trust v. Turner ("Crestwood Cove"), 164 P.3d 1247, 1255 (Utah 2007).

The first two elements are not in dispute: Vial Fotheringham concedes in its opposition that it was Bella Monte's attorney and that it owed duties to Bella Monte as a result of this relationship. (See Opp'n at 36.) Bella Monte moves for summary judgment of the third and fourth elements, regarding breach and causation.[3]

Bella Monte has also moved for summary judgment of two of Vial Fotheringham's affirmative defenses. The first is the defense of judicial error. Vial Fotheringham contends that Judge Scott's order excluding Bella Monte's expert evidence was legally improper. If true, this judicial error would negate the element of causation because it would mean that Judge Scott's conduct, not Vial Fotheringham's conduct, caused Bella Monte's injury.

The second affirmative defense is abandonment. Vial Fotheringham argues that it cannot be held liable because Bella Monte elected not to appeal Judge Scott's order. Similar to the judicial error defense, the abandonment defense, if proven, would show that Vial Fotheringham did not harm Bella Monte. Rather, the legal cause of the injury was Bella Monte's own decision to settle the case.

---

[3] Accordingly, the only element not specifically addressed in the motion is the amount of Bella Monte's damages.

Consistent with the parties' briefs, the court addresses the affirmative defenses first, before turning to the elements of the legal malpractice claim.

## I.     Judicial Error

## A.     Standard of Review

In a legal malpractice action, a plaintiff cannot prove the element of causation if "judicial error, rather than attorney malpractice, caused a client's losses." Crestwood Cove, 164 P.3d at 1255.

The parties dispute what types of decisions count as "judicial error." Vial Fotheringham argues that this court should review Judge Scott's decision de novo. In other words, if this court would have reached a different conclusion than Judge Scott in ruling on the motion to exclude evidence, then it should find that Judge Scott's ruling was judicial error.

In support of this argument, Vial Fotheringham cites the general standard for proving causation in a legal malpractice case: "the proximate cause issue is ordinarily handled by means of a 'suit within a suit' or 'trial-within-a-trial.' The objective is to establish what the result of the underlying litigation should have been (an objective standard), not what a particular judge or jury would have decided (a subjective standard)." Harline v. Barker, 912 P.2d 433, 439-40 (Utah 1996) (internal quotations and citations omitted) (emphasis in original). Vial Fotheringham interprets this "should have been" standard as requiring de novo review.

This statement from Harline is not applicable here. While a "trial within a trial" is the typical method of proving the element of causation, that is irrelevant to the question of how to prove the affirmative defense of judicial error. In fact, the dispute in Harline

centered on issue and claim preclusion; judicial error was not even discussed by that court.

Bella Monte, by contrast, argues that judicial error can only be found if Judge Scott's decision would have been overturned on appeal. A decision to issue an evidentiary sanction is reviewed for abuse of discretion:

> The district court has "broad discretion regarding the imposition of discovery sanctions." In applying the abuse of discretion standard to the district court's imposition of a particular sanction, we give the district court "a great deal of latitude in determining the most fair and efficient manner to conduct court business" because the district court judge "is in the best position to evaluate the status of his or her cases, as well as the attitudes, motives, and credibility of the parties." Thus, we will determine that a district court "has abused its discretion in choosing which sanction to impose only if there is either an erroneous conclusion of law or no evidentiary basis for the district court's ruling

Bodell Const. Co. v. Robbins, 215 P.3d 933, 943; accord Keystone Ins. Agency v. Inside Ins., 445 P.3d 434, 438 (Utah 2019). Accordingly, Bella Monte urges this court to review Judge Scott's decision for abuse of discretion in order to determine whether the sanction he imposed was judicial error.

The court agrees with Bella Monte. In Crestwood Cove, the plaintiff accused its attorney of negligence because the attorney had failed to raise an argument during an earlier lawsuit. Crestwood Cove, 164 P.3d at 1257. But the malpractice court found that the attorney had raised the argument in a motion for new trial. The court then held that it was not the attorney's fault that the original judge refused to consider the argument once it had been properly raised in that motion.

> [T]he trial court clearly erred, and therefore abused its discretion, when it refused to amend the judgment [in response to the motion for new trial]. Had the appeal proceeded, the appellate court should have reversed the trial court's decision. Thus, it was judicial error, not [the attorney's]

timeliness in presenting [his argument], that proximately caused [the plaintiff's] injury.

Id. at 1257-58 (emphasis added).

It follows, in this court's view, that a trial court judge who would not have been overruled on appeal has not committed judicial error. Accordingly, because an abuse of discretion standard would have applied if Bella Monte had proceeded with an appeal, this court will apply that same standard in reviewing Judge Scott's order.

**B.      Vial Fotheringham's Compliance with Rule 26**

Under Rule 26(a)(1)(C) of the Utah Rules of Civil Procedure, Bella Monte was required to include "[a] computation of any damages claimed and a copy of all discoverable documents or evidentiary material on which such computation is based, including materials about the nature and extent of injuries suffered" as part of its initial disclosure to the Contractors in the underlying case. Additionally, Rule 26(d)(3) states that "a party is not excused from making disclosures or responses because the party has not completed investigating the case."

Vial Fotheringham (on behalf of Bella Monte) did not include a computation of damages in its initial disclosures. Instead, it provided only a copy of the Assessment. That document identified the types of defects found on the property, indicated that the defects were observed in 100 percent of the condominiums, and warned that further study was needed to calculate damages. But it did not estimate the costs of repairing the condominiums. (See Assessment at 3-4.)

Vial Fotheringham cites Williams v. Anderson, 400 P.3d 1071 (Utah Ct. App. 2017) for the proposition that providing the Contractors' with the Assessment was sufficient to satisfy its obligations under Rule 26. In Williams, the plaintiff's disclosure

indicated that "he was entitled to 30% of [an entity's] purchase price." Id. at 1073. The court of appeal concluded this disclosure was all that Rule 26 required:

> Williams's disclosure described the precise components he intended to factor into his damages claim. The description disclosed both the fact of damages and the method by which those damages would be calculated. And while Williams did not know the purchase price was $200,000 when he served his initial disclosures, Defendants knew how much [the entity] had sold for and could readily calculate this component of Williams's damages as 30% of $200,000, or $60,000. Thus, Williams's disclosure explaining the process for calculating his claimed portion of [the entity's] purchase price satisfied his obligation under rule 26(a)(1)(C) to produce a "computation of any damages claimed."

Id. at 1075.

Here, Vial Fotheringham's disclosure was far less specific than the disclosure in Williams. It contained no formulas or estimates alerting the Contractors to the amount of damages Bella Monte would ultimately seek. In fact, as Judge Scott noted in his order, during more than two years of litigation, there was never even "at least a good faith effort to provide a ballpark number." (Memo. Dec. at 5.) Vial Fotheringham has not identified a single case in which a disclosure similar to its own was deemed sufficient.

Vial Fotheringham nevertheless contends that this type of disclosure is standard practice in construction defect cases. According to Vial Fotheringham, it is widely understood among attorneys in that specialty that damages can never be estimated until expert reports are completed, meaning initial disclosures always omit this information. Even assuming this is true, Judge Scott had no obligation to allow this departure from the Utah Rules of Civil Procedure. First, the advisory notes to Rule 26 specifically state that "[t]he Rule is not intended to require expert disclosures at the outset of a case. At the same time, the subject of damages should not simply be deferred until expert discovery." Utah R. Civ. P. 26 Advisory Committee Notes. Moreover, if the Utah Legislature wanted

to create an exception for construction defect cases, it knows how to do so.  See, e.g., Utah R. Civ. P. 26.1, 26.2, 26.3, 26.4 (altering the disclosure requirements for family law, personal injury, unlawful detainer, and probate cases, respectively).  Finally, as noted in the memorandum decision, Vial Fotheringham could have requested a scheduling order that adjusted the typical disclosure requirements.  It did not do so.  (See Memo. Dec. at 7; see also Keystone, 445 P.3d at 440 n.9 ("[I]f Keystone truly felt that it could not provide its computation . . . , a remedy existed in Utah Rule of Civil Procedure 37(a) which provides that '[a] party or the person from whom discovery is sought may request that the judge enter an order regarding any discovery issue, including: (a)(1)(A) failure to disclose under Rule 26.'").

For all of these reasons, the court concludes that Judge Scott did not abuse his discretion when he found that Vial Fotheringham had failed to comply with the disclosure requirements of Rule 26.

**C.      Defenses to a Rule 26 Violation**

"If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure."  Utah R. Civ. P. 26(d)(4) (emphasis added).

Here, Vial Fotheringham argues that its nondisclosure of Bella Monte's estimated damages was both harmless and supported by good cause, making Judge Scott's sanction unwarranted.  The court disagrees.

First, the lack of disclosure was not harmless.  The Contractors' experts estimated damages at approximately $320,000.  It appears the Contractors were legitimately

surprised to discover that Bella Monte's experts, by contrast, estimated damages at over $7 million.  As one of the Contractors' attorneys stated at the motion hearing, "It's been hard to say, is this a $700,000 case; is this a $7,000,000 case?  It goes without saying that those cases are litigated very differently."  (Trans. 31:7-9, Ex. 17 to Opp'n, (ECF No. 58-17).)  Judge Scott later cited approvingly to this statement in his order to explain why he concluded that the nondisclosure had been harmful.  (Memo. Dec. at 5.)  Vial Fotheringham waited until after fact discovery closed to reveal the kind of damages to which the Contractors could potentially be exposed.  This delay was particularly problematic in a case like this because it made it significantly more difficult for the Contractors to determine how to allocate potential damages among the multiple layers of subcontractors, some of whom might have approached the action differently knowing what kind of damages were at stake.  Certainly it was within Judge Scott's discretion to find, on these facts, that such a delay was not harmless.

Second, Vial Fotheringham did not demonstrate good cause for its delayed disclosure.  For one thing, Vial Fotheringham knew the information was important to the Contractors because they asked for it in their interrogatories, in two emails while discovery was ongoing, and in another email two days after fact discovery closed.  (See Interrogatory Responses at 6-7; Exs. 2 & 3 to Peterson Decl.)  Significantly, even if Vial Fotheringham did not have any information about damages, as it claims, it had an obligation to obtain such information as soon as possible.  See Sleepy Holdings, LLC v. Mountain West Title, 370 P.3d 963, 967 ("If factual contentions about the amount of damages . . . require further investigation or discovery, the party must undertake that investigation as early in the litigation process as is practicable.") (internal quotations

omitted); see also Utah R. Civ. Proc. 26(d)(5) ("If a party learns that a disclosure or response is incomplete or incorrect in some important way, the party must timely serve on the other parties the additional or correct information if it has not been made known to the other parties."). Bella Monte's evidence shows that its experts were continually reassessing the status of the condominiums while the underlying litigation was ongoing. (See, e.g., Exs. H & M to Mot. Summ. J.) It was within Judge Scott's discretion to conclude that at some point in the two-and-a-half-years between the initiation of the suit and the close of fact discovery, Vial Fotheringham had an obligation, at a minimum, to ask those experts for some kind of ballpark estimate regarding the amount of damages and to convey that information to the Contractors. Because Vial Fotheringham never did so, it cannot now claim that its own lack of knowledge about the amount of damages justified its failure to comply with Rule 26.[4]

Vial Fotheringham argues that, in finding that there was no good cause for the nondisclosure, Judge Scott's memorandum decision improperly insinuates that Vial Fotheringham was intentionally seeking a litigation advantage by not complying with the Rule 26. Vial Fotheringham contends that it was actually the Contractors who were engaged in gamesmanship. After all, if the Contractors were really concerned about this information, they could have challenged the alleged insufficiency of the disclosures or

---

[4] Vial Fotheringham argues that, as late as February 2018, just a month before the discovery cut-off, one of its experts said that a damage estimate would be nothing but a "wild guess." (Ex. 11 to Opp'n (ECF No. 58-11).) In context, however, the expert was clearly referring only to the cost of fixing concrete, which is also referred to by the parties as "geotechnical engineering." (Ex. 13 to Opp'n (ECF No. 58-13).) The same expert ultimately concluded that geotechnical engineering damages would total about $1 million, out of the total $7 million estimate. (See Ex. L to Mot. Summ. J.) Again, neither this court nor Judge Scott is suggesting that Vial Fotheringham had an obligation to disclose an exact amount of damages. But there is a significant difference between disclosing no damages at all and disclosing a $6 million estimate that ultimately is increased to $7 million once the concrete estimate became available. The expert's hesitance to provide a guess regarding the amount of concrete damages does not justify Vial Fotheringham's failure to provide any estimate at all.

the interrogatory responses earlier in the suit.  Or they could have moved to reopen fact discovery once they realized that Bella Monte was seeking more in damages than they had anticipated.

Judge Scott considered and rejected these arguments, and he was in a much better position than this court to weigh the motives of each party:

> Plaintiff seeks to justify its failure to disclose by attempting to shift blame onto Defendants [for] supposedly going along with its failure to disclose. The Court recognizes the possibility that a defendant in a certain case might, upon receiving an inadequate disclosure, lie in the weeds and wait until the eve of trial to exclude use of material the plaintiff thought it had fairly disclosed.  The Court has experience in addressing such situations, but this does not appear to be such a case.  Defendants did seek to obtain this information through written interrogatory and informal requests and received no meaningful new information.  They were not required to file a Statement of Discovery Issues at that point, because the consequence of the inadequate disclosure is there in the rule for all to read.  The rules do not oblige parties to object to initial disclosures when they are made, and parties do not necessarily waive objections to them by their silence.  The Rule places the responsibility of disclosure and the consequences of non-disclosure on the party seeking to use the undisclosed information.

(Memo. Dec. at 9.)

For all of the reasons stated above, the court concludes Judge Scott did not abuse his discretion in concluding that Vial Fotheringham's incomplete disclosures were neither harmless nor supported by good cause.

## D.     Applicability of Rule 37

Utah's version of a motion to compel discovery is known as a "statement of discovery issues" and is governed by Rule 37 of the Utah Rules for Civil Procedure. Under this provision, "[a] party or the person from whom discovery is sought may request that the judge enter an order regarding any discovery issue, including: (A) failure to disclose under Rule 26."  Utah R. Civ. P. 37(a)(1)(A).  Before filing a statement of

discovery issues, the moving party must certify that they first attempted in good faith to confer with the other parties in an effort to resolve the dispute. Utah R. Civ. P. 37(a)(2)(B).

The Contractors' motion was labeled a Rule 37 motion to preclude evidence. But the Contractors did not file a meet and confer certificate or a statement of discovery issues; they jumped immediately to a motion for sanctions. According to Vial Fotheringham, because the Contractors failed to properly comply with these procedures, Judge Scott abused his discretion in granting their motion.

Judge Scott directly addressed this argument and concluded that the Contractors had no obligation to file a statement of discovery issues before requesting an evidentiary sanction.[5] (Memo. Dec. at 9.) Vial Fotheringham has identified no case law contradicting that conclusion. On the contrary, Vial Fotheringham apparently admits that it has been a widely accepted practice in Utah to move for evidentiary sanctions under Rule 26 without first filing either the statement of discovery issues or meet and confer certification required by Rule 37. (See Opp'n at 32 ("[E]ach of the cases Plaintiff cites fail to emphasize this mandatory prerequisite designed to prevent the result that occurred in the Underlying Action. See Keystone, Bodell, Sleepy Holdings, supra.")

This court cannot conclude that Judge Scott abused his discretion when he was simply following binding precedent from the Utah Supreme Court and the Utah Court of Appeals. For example, in Keystone, the defendant filed a motion in limine to exclude

---

[5] While this argument is closely related to an argument already addressed above, it is technically a distinct issue. To be clear, in the previous section, Vial Fotheringham pointed to the Contractors' failure to file a Rule 37 statement of discovery issues as evidence that the Contractors were never really concerned about the lack of a damages computation, proving that Vial Fotheringham's conduct was either harmless or justified by good cause. Here, by contrast, Vial Fotheringham is arguing that compliance with Rule 37 was mandatory and that the Contractors' failure to comply provides an independent basis to conclude that Judge Scott's order was judicial error.

evidence due to the plaintiff's failure to disclose damages under Rule 26(d)(4). The Utah Supreme Court affirmed the decision of the trial court to grant the motion. <u>Keystone Ins. Agency, LLC</u>, 445 P.3d at 438, 442. The Supreme Court never suggested that a statement of discovery issues or a meet and confer certification was required before the motion in limine was filed. In fact, the Supreme Court only referred to Rule 37 once in its order, noting that the <u>plaintiff</u>, not the defendant, should have filed a statement of discovery issues if it felt that it needed additional time to comply with the disclosure requirement of Rule 26. <u>Id.</u> at 440 n.9.

Similarly, in <u>Bodell</u>, the plaintiff served an expert report that "included three new damages theories that were not disclosed during discovery." <u>Bodell Const. Co.</u>, 215 P.3d 933 at 938. The defendant immediately moved to strike the report and the district court granted the motion. <u>Id.</u> Again, there is no mention of any statement of discovery issues or meet and confer efforts. Nevertheless, the Supreme Court affirmed the decision, specifically quoting from Rule 37 to determine whether the sanction was appropriate. <u>Id.</u> at 943. The facts of <u>Sleepy Holdings</u> mirror those of <u>Bodell</u>, and the Utah Court of Appeal reached the same conclusion as the Supreme Court, upholding a sanction issued under both Rules 26 and 37 without addressing the lack of any meet and confer efforts. <u>Sleepy Holdings, LLC</u>, 370 P.3d at 968-69.

In short, perhaps Vial Fotheringham's reading of Rule 37 is reasonable. But Utah courts have repeatedly issued sanctions for violating Rule 26 without first requiring a statement of discovery issues or a meet and confer certification. Judge Scott clearly did not abuse his discretion when he did the same.

**E.      Proportionality of the Sanction**

Finally, Vial Fotheringham argues that Judge Scott's order resulted in such an extreme sanction—preventing Bella Monte from introducing evidence that its damages totaled approximately $7 million—that the decision would have been overturned on appeal for being unreasonable.  In support of this argument, Vial Fotheringham cites cases from the Southern District of New York warning that a discovery sanction must be proportionate to the discovery violation.  See, e.g., Scantibodies Lab., Inc. v. Church & Dwight Co., Case No. 14-cv-2275 (JGK), 2017 WL 605303 (S.D.N.Y. 2017); Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 162 (S.D.N.Y. 2012).

Neither of these cases involved Utah law.  But assuming that the general principles they articulate are applicable here, the court does not believe that Judge Scott's order was so disproportionate that it was an abuse of discretion.  First, the advisory notes to Rule 26 specifically encourage this result:

> If a party fails to disclose or to supplement timely its discovery responses, that party cannot use the undisclosed witness, document, or material at any hearing or trial, absent proof that non-disclosure was harmless or justified by good cause. . . .  Not being able to use evidence that a party fails properly to disclose provides a powerful incentive to make complete disclosures.  This is true only if trial courts hold parties to this standard. Accordingly, although a trial court retains discretion to determine how properly to address this issue in a given case, the usual and expected result should be exclusion of the evidence.

Utah R. Civ. P. 26 Advisory Committee Notes (emphasis added).

Additionally, Judge Scott had a much better opportunity than this court to observe the parties and their litigation practices firsthand and believed the circumstances justified

a serious sanction.  Vial Fotheringham has not presented this court with any reason to second-guess that conclusion other than the size of damages at issue.

Given Judge Scott's findings, and given that the sanction he imposed is the one specifically contemplated by the Utah Rules of Civil Procedure, the court concludes there was no judicial error here.  Bella Monte's motion for partial summary judgment is accordingly GRANTED for Vial Fotheringham's thirty-first affirmative defense.

## II.    **Abandonment**

Vial Fotheringham's thirtieth affirmative defense is abandonment.  "Broadly stated, the abandonment doctrine provides that a client forfeits any legal malpractice claims arising from an attorney's alleged mishandling of litigation when the client settles the underlying litigation before final judicial review if the compromise prevented the judicial resolution of issues that would have established that the attorney was not negligent or a cause of the client's loss."  Crestwood Cove, 164 P.3d at 1251 (internal quotations omitted).  Vial Fotheringham argues that Bella Monte's claim is barred because Bella Monte settled the case with the Contractors rather than either appeal Judge Scott's order, as Vial Fotheringham recommended, or continue to trial.

This argument is not actually available to Vial Fotheringham in this action.

Crestwood Cove made clear that the abandonment doctrine has been rejected in Utah:

> Because other jurisdictions have relied on the abandonment doctrine only in those cases that could also have been decided on traditional causation principles, we see no need to adopt the abandonment doctrine at this time. Instead, we conclude that it is more appropriate to examine whether the individual facts of each case support a finding of proximate cause. This decision is supported by both existing Utah law and policy considerations.

Id. at 1253.

Vial Fotheringham tries to reinterpret <u>Crestwood Cove</u> to mean that the abandonment doctrine does not apply if the court can resolve the case using traditional causation principles, but that it may still be invoked if the causation inquiry is inconclusive. Vial Fotheringham then states that because triable issues of fact exist regarding causation, the validity of its abandonment defense cannot be determined at this time.

This argument is a reinterpretation of <u>Crestwood Cove</u>. That case did not suggest that the abandonment defense may arise <u>after</u> a causation analysis has been conducted. Rather, it held that in Utah, the causation analysis <u>replaces</u> the abandonment doctrine entirely.

Accordingly, Bella Monte's motion for partial summary judgment is also GRANTED for Vial Fotheringham's thirtieth affirmative defense.

## III.    <u>Breach of Duty</u>

Turning to the elements of Bella Monte's legal malpractice claim, Bella Monte argues that because Vial Fotheringham violated Rule 26, it breached its duty of care to Bella Monte as a matter of law. In support of this proposition, Bella Monte cites <u>Watkiss & Saperstein v. Williams</u>, 931 P.2d 840 (Utah 1996), which states:

> An attorney has a duty to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. Moreover, an attorney engaged in litigation <u>must be conversant with the procedural and substantive rules that govern the litigation of the action</u>.

<u>Id.</u> at 846 (internal quotations omitted) (emphasis added). But <u>Watkiss & Saperstein</u> cannot be read, as Bella Monte proposes, to establish the principle that any violation of a procedural rule is automatically malpractice as a matter of law. Indeed, <u>Watkiss &</u>

<u>Saperstein</u> itself ultimately held that a law firm had not committed malpractice, even though it failed to file a complaint within the statute of limitations (a violation of a procedural rule), given ambiguity surrounding when the statute of limitations began. <u>Id.</u> at 847.

<u>Kirkham v. McConkie</u>, 427 P.3d 444 (Utah Ct. App. 2018) is particularly useful in showing that Bella Monte must do more than establish a violation of a procedural rule to prove a breach of duty. In <u>Kirkham</u>, the plaintiff sued the law firm that had represented her during her divorce. During the divorce proceeding, the plaintiff's husband had filed a petition to modify child support and the law firm had failed to file a counterpetition in response. After the petition to modify child support was granted, the plaintiff brought a malpractice action against the law firm. She argued that its failure to file a counterpetition violated Rule 13 of the Utah Rules of Civil Procedure, which governs compulsory counterclaims. The law firm argued that Rule 13 did not apply in the family law context because a petition to modify child support can be filed at any time. <u>Id.</u> at 446-47.

The law firm disclosed that it would be calling a legal expert to testify about the inapplicability of Rule 13 to family law proceedings. The plaintiff never designated an expert. After the expert deadline passed, the law firm sought summary judgment on the ground that the plaintiff could not prevail on her claim without expert testimony. Both the trial court and the court of appeal agreed:

> [T]he average juror would not know whether an attorney with ordinary skill and capacity would have filed a counterpetition under the same circumstances of this case. <u>See</u> <u>Watkiss & Saperstein v. Williams</u>, 931 P.2d 840, 846 (Utah 1996) (defining the attorney standard of care as the "duty to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of

the tasks which they undertake") (quotation simplified).  Without the help of an expert, jurors would be hard pressed to understand how the Utah Rules of Civil Procedure and the Utah Child Support Act operate together and whether an attorney would have been expected to file a counterpetition, consistent with the standards of professional conduct in the community.  Indeed, these issues require a level of expertise in the field of family law, and an expert was therefore necessary to aid the jury in identifying the attorney standard of care for filing petitions to modify child support and determining whether Law Firm had breached that standard in this case.

Id. at 447.

Here, Bella Monte assumes that violating Rule 26 means that Vial Fotheringham breached its duty of care to Bella Monte as a matter of law.  But Vial Fotheringham has maintained, both in this action and the underlying action, that in the construction defect context, parties never disclose damages until the expert report stage of the litigation.  (See Opp'n at 20; Rule 27 Opp'n at 4.)  Vial Fotheringham also submits a declaration from his retained legal expert, Barbara Berrett, who reiterates this point.  Ms. Berrett has previously prosecuted complex construction defect cases and has been "retained as an expert witness in a variety of litigation cases involving the standard of care of attorneys in litigation."  (Berrett Decl. ¶¶ 5-6 (ECF No. 59).)  Ms. Berrett declares that "[d]efense attorneys in complex construction defect cases understand and anticipate that many times the Plaintiff attorneys in these cases may not provide the precise information on the precise amount of damages until expert discovery."  (Berrett Decl. ¶ 18.)

Bella Monte never addresses this argument.  Bella Monte has not provided its own expert evidence, nor does it even mention Ms. Berrett's declaration in reply.[6] Because there is evidence that Vial Fotheringham's conduct was "consistent with the standards of professional conduct in the community" (Kirkham, 427 P.3d at 447), the

---

[6] After its reply was filed, Bella Monte filed its own notice of expert designation.  (See ECF No. 64.)

court concludes that Vial Fotheringham has raised triable issues of fact regarding whether it breached its duty to Bella Monte. It follows that summary judgment of this element is improper.

**IV.    <u>Causation</u>**

Finally, Bella Monte asks the court to find that Vial Fotheringham's violation of Rule 26 was the legal cause of Bella Monte's damages. The court cannot do so at this stage.

Bella Monte appears to believe that it may prove causation simply by eliminating Vial Fotheringham's judicial error defense. In other words, in Bella Monte's view either Vial Fotheringham or Judge Scott caused its damages, and once it shows that Judge Scott was not responsible, the only remaining option is Vial Fotheringham.

That is not how causation works in the legal malpractice context. There is a third possibility, namely that Bella Monte would not have prevailed in the underlying suit no matter what Vial Fotheringham did. As noted above, "the proximate cause issue is ordinarily handled by means of a 'suit within a suit' or 'trial-within-a-trial.'" <u>Harline</u>, 912 P.2d at 439-40 (internal quotations and citations omitted). "Generally, the question of proximate cause raises an issue of fact to be submitted to the jury for its determination." <u>Id.</u> (internal quotations omitted).

Here, because Vial Fotheringham violated Rule 26, Bella Monte was prevented from submitting expert evidence that its damages totaled over $7 million. Instead, it accepted a settlement for $500,000. But the Contractors' experts estimated damages at only about $320,000. In order for Bella Monte to prove causation, it must show that but for Vial Fotheringham's conduct, it would have obtained a recovery in an amount greater

than $500,000.  Bella Monte has not made this showing.  Had Bella Monte gone to trial and presented its $7 million expert report to the jury, it is still possible that a reasonable jury would have disregarded that report, accepted the Contractors' report, and awarded $320,000 in damages (or denied damages altogether).  Indeed, in an email sent to Bella Monte during the underlying suit, Vial Fotheringham specifically warned that the $7 million estimate was for litigation and settlement purposes only and that damages were actually much less.  Additionally, Ms. Berrett declares that, based on her review of the evidence, "Bella Monte received as much, if not more, than it would have or could have ever recovered, by way of damages when it agreed to settle for $500,000."  (Berrett Decl. ¶ 25.)  These pieces of evidence raise a triable issue regarding whether the jury would have even accepted Bella Monte's expert evidence if it had been presented to them.

Bella Monte has not submitted any evidence addressing this issue.  Nor could it have done so: this issue can only be resolved through a "trial-within-a-trial."  A jury, not the court, must determine what would have happened at trial if Vial Fotheringham had not been sanctioned under Rule 26.

For these reasons, summary judgment of the causation element is not appropriate.

## CONCLUSION

Plaintiff Bella Monte's motion for partial summary judgment (ECF No. 41) is GRANTED for Defendant Vial Fotheringham's thirtieth and thirty-first affirmative defenses, and is DENIED on the elements of breach and causation.

SO ORDERED this 9th day of April, 2020.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge