# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **BELLA MONTE OWNERS ASSOCIATION, INC.**, a Utah non-profit corporation,<br><br>        Plaintiff,<br><br>v.<br><br>**VIAL FOTHERINGHAM, LLP**, an Oregon limited liability partnership,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No. 2:19-cv-00212-TC-JCB**<br><br><br>**District Judge Tena Campbell**<br><br>**Magistrate Judge Jared C. Bennett** |

This case was referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett.[2] Before the court are (1) Plaintiff Bella Monte Owners Association, Inc.'s ("Bella Monte") short form discovery motion ("Bella Monte Motion");[3] and (2) Defendant Vial Fotheringham, LLP's ("VF") short form discovery motion ("VF Motion").[4] The court has carefully reviewed the parties' written submissions on both motions. Under DUCivR 7-1(f), the court concludes that oral argument is not necessary and, therefore, decides the motions on the

---

[1] ECF No. 20.

[2] ECF No. 83.

[3] ECF No. 51.  After considering this motion, the court ordered the parties to submit additional briefing pursuant to DUCivR 37-1(a)(7)(C).  ECF No. 65.

[4] ECF No. 72.

written memoranda. Based upon the analysis set forth below, the Bella Monte motion is granted in part and denied in part, and the VF motion is granted.

## RELEVANT BACKGROUND

**I.      Bella Monte Motion**

On December 17, 2018, Bella Monte sent a letter to VF ("December 17 Letter") indicating that Bella Monte intended to pursue a legal malpractice action against VF related to VF's representation of Bella Monte in a construction defects case ("Construction Action"). Nevertheless, according to Bella Monte, VF continued to represent Bella Monte through February 2019, which is when VF made the final distribution to Bella Monte of the proceeds from the settlement of the Construction Action.[5] Importantly, VF does not dispute that factual assertion.

On February 11, 2019, Bella Monte requested its complete file related to the Construction Action from VF. Bella Monte then initiated this legal malpractice action in state court on March 14, 2019.[6] The action was subsequently removed to this court on April 1, 2019.[7]

In June 2019, Bella Monte served VF with its first set of requests for production of documents. Bella Monte's Request No. 2 sought production of all documents related to VF's representation of Bella Monte in the Construction Action. VF responded to Request No. 2 with various objections, including an objection that Request No. 2 sought privileged communications.

---

[5] ECF No. 75 at 3, ¶ 9.

[6] ECF No. 2-1.

[7] ECF No. 2.

VF eventually produced several privilege logs. In its fourth privilege log, VF identified various documents that it was withholding as attorney work product, including 58 emails among VF personnel (collectively, "Emails").[8] Bella Monte disagreed with VF's designation of the Emails as attorney work product. After the parties were unable to resolve that dispute, Bella Monte filed its short form discovery motion, which seeks compelled production of the Emails.

## II.  VF Motion

On March 13, 2020, Bella Monte served its responses to VF's Document Requests No. 16-25 and Interrogatories No. 18-22 (collectively, "Discovery Requests"). The Discovery Requests generally sought information about repairs Bella Monte made to the property that was the subject of the Construction Action ("Subject Property"). Bella Monte objected to the Discovery Requests on the ground that they sought irrelevant information. VF disagreed with Bella Monte's objection and attempted to resolve that disagreement with Bella Monte. The parties were unable to resolve their dispute, which led to VF filing its short form discovery motion, which seeks compelled responses to the Discovery Requests.

## ANALYSIS

## I.  Bella Monte Motion

To aid in its analysis of the Emails, the court groups them into the following 2 categories: (A) those of the Emails created on or after the date of the December 17 Letter and before VF terminated its representation of Bella Monte at the end of February 2019 (collectively,

---

[8] ECF No. 75-8.

"Post-Notice Emails");[9] and (B) the remaining Emails (collectively, "Remaining Emails). The court will address each category in turn below. For the reasons explained below, the Bella Monte Motion is granted in part and denied in part.

### A.   Bella Monte Is Entitled to Production of the Post-Notice E-Mails.

In its supplemental opposition memorandum, VF argues that it is withholding the Post-Notice Emails based upon the attorney work product doctrine. As the party asserting the work product doctrine as a bar to discovery, VF bears the burden of establishing that it is applicable. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).

Although Bella Monte presents several arguments in support of its motion, the court views one of its arguments as dispositive of its request for compelled production of the Post-Notice Emails. Bella Monte argues that even if VF created the Post-Notice Emails in anticipation of litigation with Bella Monte, they are not protected as attorney work product. In support of that argument, Bella Monte relies upon *Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283 (E.D. Pa. 2002). The court finds *Koen Book* instructive here.

*Koen Book* was a legal malpractice action. *Id*. at 283. The plaintiffs retained the defendant law firm for advice about pursuing a security interest against one of its customers. *Id*. at 284. After that customer filed for bankruptcy, the defendant continued to represent the plaintiffs as creditors in the bankruptcy proceedings. *Id*. The plaintiffs eventually became dissatisfied with the defendant's services. *Id*. Consequently, on July 9, 2001, the plaintiffs

---

[9] The Post-Notice Emails are identified in VF's supplemental opposition memorandum. ECF No. 78 at 2.

informed the defendant that they were considering a legal malpractice action against it. *Id*. Nevertheless, the defendant continued to represent the plaintiffs until August 13, 2001, when its services were terminated. *Id*.

Between July 9 and August 13, 2001, several attorneys in the defendant law firm who did the legal work for the plaintiffs consulted with another attorney in the firm concerning the forthcoming legal malpractice action. *Id*. Internal documents were created among the attorneys at the defendant law firm during that period. *Id*. The plaintiffs sought production of those documents, and defendant withheld the documents on the grounds of attorney-client privilege and/or attorney work product. *Id*. at 283. The plaintiffs eventually filed a motion for production of the documents. *Id*.

Before reaching the merits of the plaintiffs' motion, the *Koen Book* court cited several legal principles that are particularly relevant to the instant case. The court stated that "a law firm owes a fiduciary duty to a client and may not engage in conflicting representations absent the exceptions set forth in Rule 1.7 of the Pennsylvania Rules of Professional Conduct." *Id*. at 285. "Otherwise, to the extent that the seeking or obtaining of legal advice by one lawyer from another lawyer inside the firm implicates or creates a conflict of interest," any privilege between the lawyers "is vitiated." *Id*. (quotations, citation, and footnotes omitted). The court also noted that "where an attorney serves two clients having common interest and each party communicates to the attorney, the communications are not privileged in a subsequent controversy between the two. . . . The fiduciary obligations of an attorney are not served by his later selection of the interests of one client over another." *Id*. (quotations and citation omitted).

With those principles in mind, the *Koen Book* court stated that the ultimate issue to be determined was "whether the defendant law firm engaged in a conflict of interest, that is, representation adversely implicating or affecting the interests of the plaintiffs, when it was receiving information from and/or providing legal advice to several of its lawyers while at the same time continuing to represent those plaintiffs." *Id*. To resolve that issue, the court looked to Pennsylvania Rule of Professional Conduct 1.7. *Id*. at 285-86.

The court acknowledged that the defendant was in an "unenviable situation" between July 9 and August 13. *Id*. at 286. However, the court concluded that the defendant "still owed a fiduciary duty to [the] plaintiffs while they remained clients" and that "[t]his duty is paramount to its own interests." *Id*. The court noted that the defendant could have either promptly sought to withdraw as the plaintiffs' counsel or, "if it reasonably believed that representation of the [plaintiffs] would not be adversely affected by also representing itself, it could have promptly solicited the [plaintiffs]' consent to continue the representation after full disclosure and consultation." *Id*. The court further noted that "[n]either course was pursued." *Id*.

The court then undertook the conflict analysis and conducted an *in camera* review of the documents. *Id*. The court's review of the documents revealed that they were "all written after the threat of the malpractice action." *Id*. The court's review also revealed that the documents, with a few exceptions, were "e-mails from one lawyer to another in the firm concerning if and how to continue to represent the [plaintiffs] and how to respond to the [plaintiffs]' communications." *Id*. The court stated that the documents were permeated with considerations "of how best to position the firm in light of a possible malpractice action." *Id*. Thus, the court concluded that the documents "clearly establish that the law firm was in a conflict of interest

6

relationship with [the plaintiffs]." *Id*. Accordingly, the court concluded that the defendant had not met its burden of proof on the issue of attorney work product and ordered the defendant to produce the documents. *Id*. at 286-87.

Applying the reasoning of *Koen Book* here, the court concludes that VF clearly had a conflict of interest from the date of the December 17 Letter to its termination of its representation of Bella Monte at the end of February 2019. During that period, VF continued to represent Bella Monte while also representing itself in relation to this malpractice action. Utah R. Prof'l Conduct 1.7(a)(1) (providing that a "concurrent conflict of interest exists if . . . [t]he representation of one client will be directly adverse to another client"). VF could have eliminated that conflict if it formally withdrew from representing Bella Monte as soon as it received the December 17 Letter. Additionally, under Rule 1.7(b), VF could have continued to represent Bella Monte if "reasonably believe[d] that [it would] be able to provide competent and diligent representation" to both itself and Bella Monte, but it was required to obtain Bella Monte's "informed consent, confirmed in writing." Utah R. Prof'l Conduct 1.7(b)(1), (b)(4). Like the defendant in *Koen Book*, VF pursued neither course of action.[10]

The substance of the Post-Notice Emails also supports the court's conclusion that a conflict of interest existed. While the court does not have the benefit of conducting an *in camera*

---

[10] Because the version of Rule 1.7 the *Koen Book* court relied upon is substantively similar to the corresponding Utah Rule of Professional Conduct, the court relies upon the Rule 1.7 analysis in *Koen Book*. *Compare Koen Book*, 212 F.R.D. at 285 n.2 (quoting version of Pennsylvania Rule of Professional Conduct 1.7 in effect at the time *Koen Book* was issued), *with* Utah R. Prof'l Conduct 1.7.

review of the Post-Notice Emails, as the court did in *Koen Book*, the court concludes that such a review is unnecessary here. In its supplemental supporting memorandum, VF admits that the Post-Notice Emails are made up of "email correspondences between (i) VF personnel internally about the legal malpractice claim, (ii) VF's attorneys' and VF's insurance carrier's contact personnel relating to coverage issues, and (iii) VF attorneys and VF's undersigned counsel in this pending action relating to this malpractice case."[11]  Thus, by VF's own admission, the Post-Notice Emails "clearly establish that [VF] was in a conflict of interest relationship with" Bella Monte. *Koen Book*, 212 F.R.D. at 286.

Because the conflict of interest existed during the time the Post-Notice Emails were created, VF's claim of attorney work product over them "is vitiated." *Id.* at 285.  Accordingly, the portion of the Bella Monte Motion directed at the Post-Notice Emails is granted.  Within 14 days after the date of this order, VF shall produce the Post-Notice Emails to Bella Monte.

      **B.**      **Bella Monte Is Entitled to Production of the Remaining Emails on a Redacted Basis.**

Although it appears that VF initially withheld the Remaining Emails based upon a claim of attorney work product related to the instant action, it now argues in its supplemental opposition memorandum that it asserted that claim because the Remaining Emails contain privileged information about VF clients other than Bella Monte. According to VF, it offered to produce the Remaining Emails to Bella Monte with that privileged information redacted, but Bella Monte refused that offer. In its supplemental reply memorandum, Bella Monte appears to

---

[11] ECF No. 78 at 6.

agree that redacted production of the Remaining Emails is acceptable, but it asks the court to conduct an *in camera* review of the Remaining Emails and make any appropriate redactions.

At this point, the court is not persuaded that an *in camera* review of the Remaining Emails is necessary. Without a showing otherwise, the court presumes that VF will make the appropriate redactions in good faith. Accordingly, this portion of the Bella Monte Motion is granted in part and denied in part. The court will not order full, unredacted production of the Remaining Emails, but does order VF to produce the Remaining Emails with any necessary redactions. If, after receipt of VF's production, Bella Monte believes that any of the redactions to the Remaining Emails are inappropriate, Bella Monte may bring an appropriate short-form motion if meeting and conferring with VF's counsel fails to resolve the matter.

## II.     VF Motion

In this motion, VF seeks compelled responses to the Discovery Requests, which as noted above, generally seek information about repairs Bella Monte made to the Subject Property. In its opposition, Bella Monte argues that its damages in this case are limited to the actual amount it would have recovered if it had been successful in the Construction Action and, therefore, any information about repairs it made to the Subject Property after the conclusion of the Construction Action is not relevant in this case. In advancing that argument, Bella Monte contends that "[t]he jury in this case must decide what should have happened in the Construction [Action] based on the same evidence that the jury would have heard in the Construction [Action]."[12] The court

---

[12] ECF No. 74 at 3.

concludes that Bella Monte's argument is without merit because it construes too narrowly the standard for discovery under Fed. R. Civ. P. 26(b)(1).

As an initial matter, the court notes that it "has broad discretion over the control of discovery." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (quotations and citations omitted). With respect to the standards for discovery, Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Importantly, "[a]fter the 2015 Amendment [to Rule 26], 'relevance' for purposes of discovery remains broader than 'relevance' for purposes of trial admissibility." *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *3 (N.D. Okla. Jan. 3, 2018).

By arguing what should or should not be considered by the jury, Bella Monte appears to focus on the issue of whether the information sought by the Discovery Requests will be admissible, which is a separate and more narrow consideration from whether that information is discoverable. *Id.* At this point, the court is concerned only with the broader standard of discoverability. Admissibility determinations will be made by Judge Campbell at the appropriate time.

Under the standards set forth above, the court concludes that the information sought by the Discovery Requests is relevant to the claims and defenses in this action, as well as proportional. Fed. R. Civ. P. 26(b)(1). Among other things, the requested information is relevant to assist in the determination of damages. Additionally, the court concludes that the burden or expense of the proposed discovery does not outweigh its likely benefit. *Id*. Therefore, the VF Motion is granted. Bella Monte shall provide full responses to the Discovery Requests within 14 days after the date of this order.

As a final matter, the court addresses VF's request for an award of reasonable expenses incurred in connection with the VF motion. Fed. R. Civ. P. 37(a)(5)(A). Based upon the arguments presented, the court concludes that Bella Monte's position was substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii). A party's litigation position is substantially justified "if it has a reasonable basis in both law and fact."[13] *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993). Although the court ruled against Bella Monte's argument, it contained a reasonable factual and legal basis on which to resist VF's request. Therefore, VF's request for an award of reasonable expenses is denied.

---

[13] Where, as here, Fed. R. Civ. P. 37 employs the same term of art as the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("EAJA"), for the same purpose of awarding costs and attorney fees, the court borrows from EAJA jurisprudence to determine substantial justification. *Lawson v. FMR LLC*, 571 U.S. 429, 459 (2014) ("[P]arallel text and purposes counsel in favor of interpreting . . . provisions consistently."); *Northcross v. Bd. of Educ. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) (per curiam) (stating that when two provisions of different statutes share similar language, that is a "strong indication" they are to be interpreted consistently); *Morissette v. United States*, 342 U.S. 246, 263 (1952) (explaining that "where Congress borrows terms of art," it also borrows their meaning).

## **ORDER**

In summary, IT IS HEREBY ORDERED:

1. The Bella Monte Motion[14] is GRANTED IN PART and DENIED IN PART.

2. Within 14 days after the date of this order, VF shall produce the Post-Notice Emails in full and the Remaining Emails with appropriate redactions.

3. The VF Motion[15] is GRANTED.

4. Within 14 days after the date of this order, Bella Monte shall produce full responses to the Discovery Requests.

5. VF's request for an award of reasonable expenses incurred in connection with the VF Motion is DENIED.

IT IS SO ORDERED.

DATED June 26, 2020.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[14] ECF No. 51.

[15] ECF No. 72.