IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BELLA MONTE OWNERS ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> VIAL FOTHERINGHAM, LLP, <br><br> Defendant. | **ORDER AND MEMORANDUM DECISION** <br><br> Case No. 2:19-cv-00212-TC-JCB <br><br> District Judge Tena Campbell <br> Magistrate Judge Jared C. Bennett |

Defendant law firm Vial Fotheringham, LLP (VF) formerly represented Plaintiff Bella

Monte Owners Association, Inc. in a construction defect case in Utah state court (the

"Underlying Action").  After the trial court excluded a critical expert report from evidence, the

Underlying Action settled.  Bella Monte was dissatisfied with how the case turned out, so it sued

VF for legal malpractice.  VF has now moved for summary judgment.  It asks the court to find

that Bella Monte has failed to meet its burden on "collectability"—i.e., that Bella Monte has

failed to prove that it would have recovered more money in the Underlying Action had the expert

report not been excluded.  It also argues that each of the Underlying Claims would have failed,

and so the court should find that VF cannot be liable for damages flowing from those claims.

For the following reasons, the court GRANTS IN PART and DENIES IN PART VF's motion.

## FACTUAL BACKGROUND[1]

Bella Monte is the management association for its namesake condominium complex in

Draper, Utah.  Construction on the complex began in 2006 and continued through 2013.  The

---

[1] Because legal malpractice involves a "case within a case," the court will differentiate between parties and events in the "Underlying Action" and parties and events in the "Malpractice Action" by using those two terms.

project can be divided into two phases: Phase 1 (Buildings 1 through 13) and Phase 2 (Buildings 14 through 23 and the Clubhouse).  Bella Monte noticed structural problems at the complex, which led to Bella Monte hiring VF to file the Underlying Action in 2015 against the developers of the complex—Bella Monte, LLC, Compass Investments L.C., and Compass Development Group, Inc. (collectively, the "Developers")—alleging construction defects.  The complaint (the "Underlying Complaint") was filed on October 5, 2015.  The Developers filed a third-party complaint against 21 Construction (the "General Contractor").  The General Contractor filed a fourth-party complaint against several Subcontractors.  (The Developers, General Contractor, and Subcontractors are collectively the "Underlying Defendants.")  Bella Monte's Underlying Complaint asserted eighteen claims against the Developers.  Ten were tort claims, seven were contract claims, and one claim sought to pierce the corporate veil.[2]

During the Underlying Action, Bella Monte (VF) retained an expert, Sean Gores, who prepared an expert report (the "Gores Report").  The Gores Report concluded that the total cost to repair the defects at the complex would be $7,263,594, and it apportioned the damages among the Underlying Defendants.  Of this sum, the cost to repair Buildings 14 through 23 and the Clubhouse was $3,507,251.  The Underlying Defendants had two expert witnesses who were prepared to testify to the repair cost being between $236,086.41 and $502,302.  In the Underlying Action, fact discovery closed in March 2018.  Bella Monte (VF) disclosed the Gores Report in April—past the deadline.

As a result, the Underlying Defendants moved to preclude evidence or argument about damages at trial.  The motion requested that Bella Monte be prohibited from submitting the

---

[2] Four Underlying Action claims—Thirteen, Fourteen, Seventeen, and Eighteen—are not at issue in the Malpractice Action.  Seven tort claims and seven contract claims remain here.

Gores Report, due to its failure to provide an estimate of damages in its initial disclosures or in response to the Underlying Defendants' interrogatories.  Bella Monte (VF) opposed the motion, arguing that there had been no way to provide an estimate earlier in the case because its investigation into the scope of defects was ongoing throughout the litigation.

Three months later, the trial court granted the motion to exclude the Gores Report.  The trial court found that Bella Monte (VF) did not comply with the initial disclosure requirements imposed by Utah Rule of Civil Procedure 26.  Rather than appeal the order, Bella Monte settled the Underlying Action for $500,000 in October 2018.  Each Underlying Defendant paid a portion of this settlement, with the money coming from their respective insurance companies.  (Opp'n Ex. S, ECF No. 124-4.)  Some of the Underlying Defendants' insurance policies had policy exclusions that could have excluded coverage for some of Bella Monte's alleged construction defects.  But apart from the insurers sending reservation of rights letters to Bella Monte, coverage was not an issue in the Underlying Action.

Within six months of the settlement, Bella Monte brought the Malpractice Action against VF, arguing that VF's failure to comply with the Rule 26 disclosure requirements had damaged Bella Monte in the amount of around $7,000,000.  VF moved to dismiss the Malpractice Action (ECF No. 8), which the court denied.  (ECF Nos. 27 & 28.)  Later, Bella Monte moved for partial summary judgment on two of VF's affirmative defenses, along with some elements of legal malpractice.  (ECF No. 41.)  The court granted the motion on the defenses but denied it for the rest.  (ECF No. 73.)  Now VF has moved for summary judgment on all Bella Monte's claims.[3] (ECF No. 107.)

---

[3] VF's motion does not mention Bella Monte's second claim in the Malpractice Action, "Breach of Contract/Implied Covenant of Good Faith and Fair Dealing."  (Compl. ¶¶ 42–47, ECF No. 2-1.)  At oral argument, VF's counsel implied that this claim is analytically similar to the breach of fiduciary duty claim.

## LEGAL STANDARD

In general, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000)).

When evaluating a motion for summary judgment, the court must view the facts and draw all reasonable inferences in favor of the nonmoving party. Id. (quoting Turner v. Pub. Serv. Co., 563 F.3d 1136, 1142 (10th Cir. 2009)). But this is true only if "there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893–94 (10th Cir. 2019) (quoting Teets v. Great-W. Life & Annuity Ins. Co., 921 F.3d 1200, 1211 (10th Cir. 2019)).

## ANALYSIS

"[W]hen bringing a legal malpractice suit, '[c]lients . . . may sue for damages based on breach of contract, breach of fiduciary duty, or negligence." Gregory & Swapp, PLLC v. Kranendonk, 2018 UT 36, ¶ 25, 424 P.3d 897, 904. Accordingly, Bella Monte's Malpractice Complaint states all three claims against VF: professional negligence, breach of contract / breach

4

of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  (Compl., ECF No. 2-1.)

Because malpractice suits only arise out of some alleged failure of the attorney–client relationship, "a malpractice action . . . necessarily presents a 'case within a case.'"  Gregory & Swapp, 2018 UT 36, ¶ 22, 424 P.3d at 903.  Here, the case within the case is VF's alleged failure to win more than $500,000 on behalf of Bella Monte in the Underlying Action.  In the Malpractice Action, not only must Bella Monte prove that the Underlying Action had value beyond the $500,000 settlement, but it must also establish the familiar elements of negligence. "[A] plaintiff must plead and prove (i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." Crestwood Cove Apartments Bus. Trust v. Turner, 2007 UT 48, ¶ 30, 164 P.3d 1247, 1255.

The first two elements are not in dispute: VF was Bella Monte's attorney, and it owed duties to Bella Monte because of this relationship.  VF essentially argues on summary judgment that Bella Monte has failed to prove "collectability" (a mix of causation and damages) and that it is thus entitled to judgment as a matter of law.  VF also contests the validity of Bella Monte's Underlying Claims.  Its five primary arguments are:

1. Bella Monte failed to offer evidence showing that (a) any insurance company would have covered any hypothetical judgment against the Underlying Defendants and (b) any of the Underlying Defendants had the financial ability to pay for a hypothetical judgment.

2. Bella Monte's Underlying Claims for Buildings 1 through 13 were barred by Utah's statute of repose.

3.  Bella Monte's Underlying Negligence Claims were barred by the economic-loss rule, and even if they were not, Bella Monte did not present evidence to support these claims.

4.  Bella Monte lacked privity to pursue the Underlying Contract Claims.

5.  Bella Monte's claim against VF for breach of fiduciary duty fails because it is impermissibly duplicative of its professional negligence claim.

The court will address each argument in turn.

## I.   Collectability

VF argues that for Bella Monte to succeed in the Malpractice Action, it must present the following evidence of causation and damages:

> (i) its total damages; (ii) the degree of fault that would have been allocated to each of the Underlying Defendants; (iii) the amount of Bella Monte's damages that each Defendant would have been liable to pay to Bella Monte; and (iv) that each Defendant had the ability to pay their portion of Bella Monte's total damages.

(Mot. at 26, ECF No. 107.)  For purposes of its motion, VF assumes that (i), (ii), and (iii) are satisfied.  The crux of its argument in the Malpractice Action is that Bella Monte lacks evidence on (iv)—"collectability," and so Bella Monte has not proven that it would have collected a larger settlement or judgment had VF not been negligent.  In other words, even if Bella Monte would have <u>received</u> a larger judgment, Bella Monte has not shown that it could have <u>collected</u> on that judgment.

### A.   Burden of Proof

VF and Bella Monte agree that Utah law is silent on the preliminary question of which party bears the burden of proof on collectability.  Collectability is certainly relevant, because part of showing causation is showing that absent attorney negligence, "the client would have benefited"—that "he would have received more than he ultimately received."  <u>Christensen &</u>

Jensen, P.C. v. Barrett & Daines, 2008 UT 64, ¶ 26, 194 P.3d 931, 938.  Of the thirty-one jurisdictions to discuss collectability in the legal malpractice context, thirty have picked a side to bear this burden.  The majority view (seventeen states) places the burden on the legal malpractice plaintiff (the client),[4] and the minority view (twelve states plus D.C.) puts it on the legal malpractice defendant (the law firm).[5]  The predominant view was formerly shared by a supermajority of states, but in recent years the split has become much more even (about 60–40).

A sister district court confronted a similar silence from the Kansas Supreme Court and predicted that Kansas would follow the minority approach.  See Berndt v. Levy, No. 08-1067-WEB, 2010 WL 3913240 (D. Kan. Sept. 30, 2010).  The court believes that the Utah Supreme court would likely concur.  In discussing proximate cause in a malpractice case, the Utah Supreme Court cited § 53 of the Restatement (Third) of the Law Governing Lawyers.  Comment b of Restatement § 53 puts the burden of showing (un)collectability on the defendant law firm:

---

[4] See DiPalma v. Seldman, 33 Cal. Rptr. 2d 219, 220–21 (Ct. App. 1994); LeHouillier v. Gallegos, 2019 CO 8, 434 P.3d 156; Hartford Cas. Ins. Co. v. Farrish-LeDuc, 882 A.2d 44, 50 (Conn. 2005); Fernandes v. Barrs, 641 So. 2d 1371, 1375 (Fla. Dist. Ct. App. 1994); Allen Decorating v. Oxendine, 483 S.E.2d 298, 301 (Ga. Ct. App. 1997); Kohler v. Woollen, Brown & Hawkins, 304 N.E.2d 677, 679 (Ill. App. Ct. 1973); Huber v. Watson, 568 N.W.2d 787, 793 (Iowa 1997); Poly v. Moylan, 667 N.E.2d 250, 255 (Mass. 1996); Christy v. Saliterman, 179 N.W.2d 288, 293 (Minn. 1970); ; Selimanovic v. Finney, 337 S.W.3d 30, 35 (Mo. Ct. App. 2011); Eno v. Watkins, 429 N.W.2d 371, 372 (Neb. 1988); George v. Caton, 1979-NMCA-028, ¶ 47, 93 N.M. 370, 378, 600 P.2d 822, 830; Rorrer v. Cooke, 329 S.E.2d 355, 369 (N.C. 1985); Paterek v. Petersen & Ibold, 2008-Ohio-2790, ¶ 37, 118 Ohio St. 3d 503, 509, 890 N.E.2d 316, 321; Haberer v. Rice, 511 N.W.2d 279, 285 (S.D. 1994); Payne v. Lee, 686 F. Supp. 677, 678 (E.D. Tenn. 1988); Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp., 299 S.W.3d 106, 112 (Tex. 2009).

[5] See Power Constructors, Inc. v. Taylor & Hintze, 960 P.2d 20, 31–32 (Alaska 1998); Smith v. Haden, 868 F. Supp. 1, 2–3 (D.D.C. 1994); Clary v. Lite Machines Corp., 850 N.E.2d 423, 440 (Ind. Ct. App. 2006); Jourdain v. Dineen, 572 A.2d 1304, 1306 (Me. 1987); Teodorescu v. Bushnell, Gage, Reizen & Byington, 506 N.W.2d 275, 278–79 (Mich. Ct. App. 1993); Carbone v. Tierney, 864 A.2d 308, 319 (N.H. 2004); Albee Assocs. v. Orloff, Lowenbach, Stifelman & Siegel, 721 A.2d 750, 757 (N.J. Super. Ct. App. Div. 1999); Lindenman v. Kreitzer, 775 N.Y.S.2d 4, 8 (App. Div. 2004); Ridenour v. Lewis, 121 Or. App. 416, 419, 854 P.2d 1005, 1006 (1993); Kituskie v. Corbman, 714 A.2d 1027, 1032 (Pa. 1998); Smith v. McLaughlin, 769 S.E.2d 7, 18 (Va. 2015); Schmidt v. Coogan, 335 P.3d 424, 426 (Wash. 2014); see also Berndt v. Levy, No. 08-1067-WEB, 2010 WL 3913240, at *27 (D. Kan. Sept. 30, 2010) (predicting Kansas law would put the burden on the defendant).  Louisiana is the lone state to hold that collectability is not a relevant consideration in a legal malpractice case.  Ewing v. Westport Ins. Corp., 2020-00339 (La. 11/19/20), 315 So. 3d 175, 183.  In so holding, Louisiana agreed that collectability is not the plaintiff's burden, essentially putting it in the minority column.

"[T]he lawyer's misconduct will not be the legal cause of loss to the extent that the defendant lawyer can show that the judgment or settlement would have been uncollectible, for example because the previous defendant was insolvent and uninsured."  This is a fair result because "most civil judgments are collectible and because the defendant lawyer was the one who undertook to seek the judgment that the lawyer now calls worthless."  Id.  VF counseled Bella Monte that it had a home run of a case and now tells the court that the case was really a dud.  (Opp'n Ex. R (McBride Dep.) 83:20–84:6, ECF No. 124-3; Ex. J (Shuquem Dep.) 82:2–83:13, ECF No. 123-1.)  Why would VF take a case with such obvious collectability problems?

Placing the burden of collectability on the plaintiff would unfairly burden the party that already faces an uphill battle to prove the case within the case.  It also unfairly presumes uncollectability when, as the Restatement identifies, "most civil judgments are collectible." Restatement (Third) § 53 cmt. b.  In Utah, money judgments are enforceable for eight years and may be renewed for another eight years.  Utah Code Ann. §§ 78B-5-202(1), 78B-6-1802, 78B-6-1804.  Even if a judgment is uncollectable today, it might become collectable in five years.  To put the burden on the plaintiff would not only presume insolvency; it would presume continued insolvency.  See Schmidt v. Coogan, 335 P.3d 424, 429 (Wash. 2014).  "Normally, enforcement of the judgment remains for another day."  Smith v. Haden, 868 F. Supp. 1, 2 (D.D.C. 1994). And in cases like this, with sophisticated, insured parties on both sides of the underlying lawsuit, putting the collectability burden on the plaintiff would inject complicated insurance coverage debates into every motion.  Transforming uncollectability into an affirmative defense would limit insurance coverage evidence to a subset of cases—where the attorney raises uncollectability as a defense.

Another reason that this burden ought to be on the malpractice defendant is the possibility of settlement. A plaintiff can sue a former law firm for malpractice if the plaintiff received an inadequate settlement. See generally Hipwell ex rel. Jensen v. Sharp, 858 P.2d 987 (Utah 1993). Discussing collectability in the abstract puts the cart before the horse. It presumes that the case would have proceeded to trial, where the plaintiff would have won and received a judgment. It ignores the possibility that the parties could have settled beforehand, providing more certainty for both sides. Smith, 868 F. Supp. at 2.

Based on the Underlying Defendants' expert reports, $500,000 was the expected floor for damages at trial. And the Underlying Defendants (i.e., their insurers) paid that full amount to settle the Underlying Action. Had the Gores Report not been excluded, Bella Monte would have had more leverage at settlement talks and could have negotiated for more than $500,000. This is true even though a jury could have later disregarded the Gores Report and awarded $500,000 or less. Extra leverage in settlement talks would have no doubt "benefited" Bella Monte, Christensen & Jensen, 2008 UT 64, ¶ 26, 194 P.3d at 938, and VF's alleged negligence caused Bella Monte to lose this leverage—indeed, to forfeit more settlement money. No matter whose burden it is to establish collectability (or the lack thereof), Bella Monte has shown a measure of collectability simply by showing its lost settlement leverage. (Shuquem Dep. 117:6–22, ECF No. 123-1; Opp'n Ex. Q (Sorensen Decl.) ¶ 8, ECF No. 124-2.)

B. VF's Evidence of Uncollectability

Even though VF argues that it should not bear this burden, it presented some evidence of uncollectability. VF's argument boils down to three issues. First, there were "each occurrence" policy limits that would cap the amount each insurer would pay. Second, there were various policy exclusions that, if enforced, would deny coverage for some defects at the condominium

complex (and thus limit what Bella Monte would have recovered in the Underlying Action). Third, Bella Monte did not offer proof that the insurers would pay, so the court must presume that they would not pay.

VF argues that the Developers and the General Contractor only had up to $1,000,000 in coverage under the Cincinnati Insurance Company commercial general liability (CGL) insurance policy. Bella Monte correctly points out that the Developers were also covered under other insurance policies, providing them with up to $9,000,000 in coverage. Likewise, the seventeen Subcontractors had insurance policies with combined limits of $17,000,000. This is more than enough to pay any conceivable judgment or settlement.

VF next lists several policy exclusions that it argues would have barred Bella Monte's Underlying Claims. There include exclusions for stucco, water damage, mold and fungi, "accidents" or "occurrences," "known losses," and "Your Work." VF thoroughly discusses these exclusions. But as Bella Monte points out, no insurer had yet enforced the exclusions. The most that any insurer did was send a reservation of rights letter to Bella Monte in the Underlying Action. VF's expert, Barbara K. Berrett, argues that "the assertions made in the letter cannot be ignored." (Reply Ex. 4 at 3, ECF No. 142-4.) She also says, however, that "[a] carrier is required to provide that notice at the beginning of the case." (Id.) Both of Bella Monte's experts maintain that these letters are pro forma and suggest nothing about whether an insurer will later deny coverage. (Opp'n Ex. B (Dougherty & Morse Expert Reports) at 4, 18, ECF No. 124-7.) It strikes the court as odd to equate a reservation of rights with an exercise of rights; in any event, the court will not make this inference against Bella Monte when "all reasonable inferences" are to be drawn "in favor of the nonmoving party." Tabor, 703 F.3d at 1215 (emphasis added). Here is a reasonable inference that the court will make: If the insurers paid $500,000 to settle the case

without raising coverage issues, they would have paid more than $500,000 if Bella Monte had

the Gores Report in hand.

Nearly all of VF's cited cases have an insurance company as a party. When an insurer

tells the court that it wants to deny coverage or enforce a particular exclusion, there is obviously

no question about the insurer's intent. But none of the insurers are parties to the Malpractice

Action. While it is interesting to debate what an insurer would or would not do, all the court can

do here is speculate. On the one hand, VF points to the reservation of rights letters and the

policy exclusions, and on the other, Bella Monte points to the continued coverage and the

settlement checks. Whether coverage or indemnification would have existed here is a classic

issue of fact incapable of resolution on summary judgment.

"[I]t is a rare case when an issue of collectibility in a malpractice case is so clear that it

can be decided as a matter of law." Burke v. Roberson, 417 N.W.2d 209, 213 (Iowa 1987).[6]  This

statement reflects the principle that "[n]ormally, proximate cause "'raises an issue of fact' and

therefore cannot be decided on summary judgment." Crestwood Cove Apartments, 2007 UT 48,

¶ 31, 164 P.3d at 1255.  The court finds that Bella Monte has created a genuine dispute about the

material fact of collectability. Whether the insurers would have sought to deny coverage for

Bella Monte's damages based on policy exclusions, whether those same insurers would have

paid more in a settlement had the Gores Report not been excluded, and whether they would have

paid a larger hypothetical judgment are clearly in dispute. No matter whose burden it is to

establish collectability (or the lack thereof), these issues are material to the resolution of the

Malpractice Action and should be submitted to a jury.

---

[6] This is true even though the collectability burden falls on the plaintiff in Iowa.  Huber v. Watson, 568 N.W.2d 787, 793 (Iowa 1997).

## II.   Statute of Repose

VF argues that Utah's statute of repose bars recovery for any alleged damages to the complex's "roads, curbs, gutters, and parking areas."  (Mot. at 45, ECF No. 107.)  A statute of repose bars "any suit that is brought after a specified time since the defendant acted."  Black's Law Dictionary (11th ed. 2019).  Utah's version says that "an action . . . against a provider based in contract or warranty shall be commenced within six years after the date of completion . . . of an improvement."  Utah Code Ann. § 78B-2-225(3)(a).  "Completion" can be established when "a Certificate of Occupancy [is] issued by a governing agency."  § 78B-2-225(1)(c).  Bella Monte did not dispute that the complex's roads, curbs, gutters, and parking areas were completed and in use by June 26, 2007, the date Draper City issued the first Certificate of Occupancy to units in Building 3.  (See Mot. ¶ 9, ECF No. 107.)  The Underlying Complaint was filed on October 5, 2015, which puts these improvements outside the six-year window.  Bella Monte's counsel clarified at oral argument that it concedes this point only for Phase 1 improvements.  The court therefore finds that damages relating to Phase 1 roads, curbs, gutters, and parking areas are barred by the statute of repose.

VF also argues that because the trial court found that Bella Monte's contract and warranty claims for Buildings 1 through 13 were barred by the statute of repose, it cannot recover damages here for those claims.  Bella Monte has conceded this point.  (Opp'n ¶ 103, ECF No. 120.)  Bella Monte also did not dispute that because of this fact, the maximum for which VF can be liable is $3,007,251—the difference between the cost of Phase 2 repair damages and the settlement payment that Bella Monte received.  The court therefore grants partial summary

judgment on this issue and caps Bella Monte's damages at $3,007,251, minus any damages relating to Phase 1 roads, curbs, gutters, and parking areas.[7]

### III.    Economic-Loss Rule

VF next argues that the economic-loss rule bars Bella Monte's Underlying Negligence Claims.  The economic-loss rule is "[t]he principle that a party generally may not recover in tort for financial harm that results from the defendant's failure to perform under a contract."  Black's Law Dictionary (11th ed. 2019).  In Utah, this doctrine has been codified for "action[s] for defective design or construction."  Construction defect actions are "limited to breach of the contract, whether written or otherwise, including both express and implied warranties."  Utah Code Ann. § 78B-4-513(1).  Although there is an independent common-law economic loss doctrine, construction defect cases are no longer subject to the common-law rule.  Hayes v. Intermountain GeoEnvironmental Servs., Inc., 2021 UT 62, ¶ 20, 498 P.3d 435.

The Utah Supreme Court identified only two exceptions to the statutory economic-loss rule.  The first exception is "an action for damage to 'other property or physical personal injury.'"  Id. (quoting § 78B-4-513(2)).  That is not at issue.  The second exception allows a person in privity of contract to also bring tort claims "to which the person is entitled based on an intentional or willful breach of a duty existing in law."  Id. (quoting § 78B-4-513(2), (5)).  This exception is key.

Bella Monte's Negligence Claims are all based on "dut[ies] existing in law."  Id.  The Utah Supreme Court recognized seven limited fiduciary duties that a developer owes to an

---

[7] VF formerly argued that an unrelated settlement agreement between Bella Monte and the Developers (the "2012 Settlement Agreement") released known construction defect claims by the HOA Board, and so the 2012 Settlement Agreement is an independent reason to find that Phase 1 damages are barred.  Because Bella Monte conceded that these damages are already barred by the statute of repose, VF withdrew this argument.  (Reply at 19 n.8, ECF No. 142.)

association and its members in <u>Davencourt at Pilgrims Landing Homeowners Ass'n v.</u>

<u>Davencourt at Pilgrims Landing, LC</u>, 2009 UT 65, ¶ 36, 221 P.3d 234, 246.  Developers owe

these duties:

> (1) to use reasonable care and prudence in managing and maintaining the common property;
> (2) to establish a sound fiscal basis for the association by imposing and collecting assessments and establishing reserves for the maintenance and replacement of common property;
> . . .
> (4) to maintain records and to account for the financial affairs of the association from its inception;
> (5) to comply with and enforce the terms of the governing documents, including design controls, land-use restrictions, and the payment of assessments;
> (6) to disclose all material facts and circumstances affecting the condition of the property that the association is responsible for maintaining; and
> (7) to disclose all material facts and circumstances affecting the financial condition of the association, including the interest of the developer and the developer's affiliates in any contract, lease, or other agreement entered into by the association.

<u>Id.</u> (emphases removed) (quoting Restatement (Third) of Property: Servitudes § 6.20 (2000)).

Tort claims for breaches of the <u>Davencourt</u> duties "fall outside the scope of the economic loss

rule."  <u>Id.</u> ¶ 38, 221 P.3d at 247.

Bella Monte states in its opposition that except for a "claim for breach of the Developer's

limited fiduciary duty recognized in *Davencourt*," its "claims against the Developers all sounded

in contract."  (Opp'n at 44 & n.8, ECF No. 120.)  VF construes this as a concession, but in

reality, it is not.  Six of the seven negligence claims in Bella Monte's Underlying Complaint

borrow directly from the <u>Davencourt</u> list.  The seventh Underlying Negligence Claim was for

negligent misrepresentation and references many of the limited fiduciary duties outlined in

<u>Davencourt</u>.  (<u>See</u> Underlying Compl. ¶¶ 72–76, ECF No. 107-1); <u>Davencourt</u>, 2009 UT 65,

¶ 39, 221 P.3d at 247.  These claims are therefore not swallowed up by the economic-loss rule.

14

Even so, VF argues in its reply memorandum, Bella Monte failed to submit evidence that the Developers violated any of these duties or caused any damages, so the court should find that VF is not liable for the failure of these seven claims.  Bella Monte had notice of this argument in VF's motion (Mot. at 50, ECF No. 107), but it failed to respond in its opposition.  If a party fails to make an argument in opposition to a motion for summary judgment, that argument is waived. Pennington v. Northrop Grumman Space & Mission Sys. Corp., 269 F. App'x 812, 820 (10th Cir. 2008); Hinsdale v. City of Liberal, 19 F. App'x 749, 768 (10th Cir. 2001).

Even if Bella Monte had responded, summary judgment would still be appropriate on these seven claims.  VF spends an entire page of its reply memorandum addressing the Negligence Claims.  Bella Monte has not shown that "the Developers failed to maintain a sound fiscal basis," nor has it shown that "the Developers failed to keep adequate maintenance and accounting records," nor has it shown that "the Developers failed to comply with and enforce the terms of the Declaration and other governing documents," nor has it shown that "the Developers failed to disclose all 'known' material facts or circumstances affecting the conditions of the Common Area and Units."  (Reply at 33, ECF No. 142.)  There is simply no evidence tending to show that the Developers breached any of the Davencourt duties, let alone evidence that VF's alleged malpractice on the construction defect side of the litigation affected these claims at all.[8] See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").  Because there is therefore no genuine

---

[8] As might be expected, given the limited scope of the duties, these Negligence Claims are not the central piece of the Underlying Action.  Even if VF committed malpractice by failing to submit the Gores Report on time, how the malpractice would have affected claims for failing to "establish a sound fiscal basis" and failing to "enforce the terms" of the CC&Rs is unclear.  The bulk of this case is the Contract Claims.

dispute of material fact as to the inapplicability of the Negligence Claims, the court grants

summary judgment on this issue and finds that VF cannot be liable for these claims.[9]

## IV.   Bella Monte's Contract Privity

VF next argues that Bella Monte lacked privity to pursue the Underlying Contract

Claims.  Under Utah law, absent an assignment of rights, "an action for defective design or

construction may be brought only by a person in privity of contract with the original contractor,

architect, engineer, or the real estate developer."  Utah Code Ann. § 78B-4-513(4), (6).  Because

the condominium unit owners bought their units directly from the Developers, VF argues that

Bella Monte is not in privity of contract with the Developers, at least vis-à-vis condominium

units (and their alleged defects).

Bella Monte gives four reasons that the court should deny summary judgment on the

privity issue.  It argues that (1) the Utah Condominium Ownership Act permits Bella Monte to

sue on behalf of unit owners, (2) Bella Monte is in privity with the Developers about the

common areas, (3) the CC&Rs permit Bella Monte to sue on behalf of unit owners, and (4) if the

other arguments fail, VF should be estopped from asserting lack of privity because VF created

the privity issue.  Bella Monte's first and second arguments provide a sound basis to conclude

that it had the right to pursue the Underlying Contract Claims.

The Utah Condominium Ownership Act allows a condominium management association

to bring actions "on behalf of two or more of the unit owners, as their respective interest may

appear, with respect to any cause of action relating to the common areas and facilities or more

than one unit."  Utah Code Ann. § 57-8-33.  If an association satisfies § 57-8-33, it has standing

---

[9] VF also argues that the Underlying Negligence Claims were barred by Bella Monte's Amended and Restated Declaration of Covenants, Conditions and Restrictions (CC&Rs), which contain an exculpatory clause immunizing the Developers from their own negligence.  Because the court already granted summary judgment based on a lack of evidence, the court declines to address the CC&R issue.

to sue, even without an independent injury.  Lodge at Westgate Park City Resort & Spa Condo. Ass'n v. Westgate Resorts Ltd., 2019 UT App 36, ¶ 21, 440 P.3d 793, 799.  Bella Monte also has standing to bring construction defect claims for the common areas because Bella Monte, LLC (a Developer) transferred title to the common areas directly to Bella Monte.  (Mot. Ex. 22, § 4.6, ECF No. 107-22.)  Unsurprisingly, VF does not challenge either of these arguments in its reply memorandum.  The court denies summary judgment on the privity issue.

## V.   Bella Monte's Breach of Fiduciary Duty Claim

VF finally argues that Bella Monte's breach of fiduciary duty claim is duplicative of its professional negligence claim, so it must be dismissed.  It cites as the rule,

> a fiduciary breach claim is duplicative of a "legal malpractice" claim when the operative facts, those that actually caused the plaintiffs' injuries, are the same. Thus, allegations that constitute negligence, which do not implicate a duty of confidentiality or loyalty, and are merely duplicative of that cause of action, do not support a cause of action for fiduciary breach.

(Mot. at 53, ECF No. 107 (quoting Idstrom v. German May, P.C., No. 19-2013-JAR-TJJ, 2019 WL 4141013, at *15 (D. Kan. Aug. 30, 2019)).)  The Idstrom court formulated this rule by applying Kansas law.  Other circuits applying state law support VF's rule.  Nordwind v. Rowland, 584 F.3d 420, 432 (2d Cir. 2009) (applying New York law); McKenzie v. Berggren, 99 F. App'x 616, 620–21 (6th Cir. 2004) (applying Michigan law); Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C., 385 F.3d 737, 744 (7th Cir. 2004) (applying Illinois law); cf. Chastain v. Poynter L. Grp., 812 F. App'x 443, 445 (9th Cir. 2020) (holding that summary judgment was proper under California law "not because duplicative claims are necessarily impermissible, but because the claim was actually for legal malpractice").

Even if the court accepted VF's rule, Bella Monte's claim is not duplicative.  Utah cases that discuss both causes of action draw clear lines between them.  See, e.g., Christensen &

Jensen, 2008 UT 64, ¶ 21, 194 P.3d at 937–38; Guardian Title Co. of Utah v. Mitchell, 2002 UT 63, ¶ 14, 54 P.3d 130, 132–33; Kilpatrick v. Wiley, Rein & Fielding, 909 P.2d 1283, 1290 (Utah Ct. App. 1996).  The Utah Supreme Court has framed the major difference between professional negligence and breach of fiduciary duty as the type of wrong: "a negligent act" versus "a fiduciary breach."  USA Power, LLC v. PacifiCorp, 2016 UT 20, ¶ 113, 372 P.3d 629, 671 (quoting Christensen & Jensen, 2008 UT 64, ¶ 25, 194 P.3d at 938) ("[T]he same standard of causation applies."); see also Gables at Sterling Vill., 2018 UT 04, ¶ 56, 417 P.3d at 110 ("The difference between a negligence claim and a breach of fiduciary duty claim therefore lies mainly in the type of duty owed.").  Utah courts therefore contemplate bringing a malpractice suit under both theories.  See Kilpatrick, 909 P.2d at 1290 ("Breach of fiduciary duty, therefore, provides a basis for legal malpractice separate and apart from professional negligence."); cf. Mitchell, 2002 UT 63, ¶ 14, 54 P.3d at 133 ("With respect to duties that arise both in tort and contract, however, a plaintiff may elect to bring a tort action, a contract action, or both.").

Bella Monte contends that the facts supporting malpractice differ from those supporting breach of fiduciary duty.  In its words, the malpractice claim is simple: VF was negligent when it failed to disclose the Gores Report on time, and Bella Monte was harmed by the judge's ruling excluding the Gores Report.  The breach of fiduciary duty claim arises out of the same course of conduct, but the heart of the claim is that VF had a fiduciary duty to inform Bella Monte that the Underlying Defendants moved to exclude the Gores Report and to explain the potential consequences of the motion.  VF also had a duty to counsel Bella Monte that it should terminate the attorney–client relationship and seek replacement counsel.  By failing to disclose these facts to Bella Monte, VF squandered Bella Monte's chance to defeat the motion to exclude.

The court agrees with Bella Monte.  Bella Monte has presented evidence that VF knew it committed malpractice and said nothing.  (McBride Dep. 76:8–77:3, 81:10–15, 85:4–13, ECF No. 124-3.)  If proven at trial, this would support a separate claim for breach of fiduciary duty.  See Kilpatrick, 909 P.2d at 1290 ("As fiduciaries, attorneys have a legal duty 'to . . . disclose any material matters bearing upon the representation [of the client].'" (quoting 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 11.1, at 631 (3d ed. 1989))).  Because the damages appear to be identical, Bella Monte "cannot have a double recovery for the same loss."  Brigham City Sand & Gravel v. Mach. Ctr., Inc., 613 P.2d 510, 511 (Utah 1980).  But there is no reason to prevent Bella Monte from presenting multiple theories to the jury.  The court denies summary judgment here.[10]

**CONCLUSION**

The court GRANTS IN PART and DENIES IN PART VF's motion for summary judgment.  It orders as follows:

1. Summary judgment is GRANTED on the Underlying Negligence Claims: the First, Second, Third, Fourth, Fifth, Sixth, and Seventh causes of action.  Bella Monte has failed to put forward evidence such that a reasonable jury might find for it on this issue.

2. Summary judgment is DENIED on the Underlying Contract Claims: the Eighth, Ninth, Tenth, Eleventh, Twelfth, Fifteenth, and Sixteenth causes of action.  Bella Monte has created a genuine dispute of material fact as to both potential insurance coverage and collectability.

3. Summary judgment is DENIED on Bella Monte's breach of fiduciary duty claim.

---

[10] The parties did not discuss Bella Monte's breach of contract claim against VF, (Compl. ¶¶ 42–47, ECF No. 2-1.), and neither does the court.

4.  Summary judgment is GRANTED on the statute of repose issue.  Applying the statute,

    the maximum amount that Bella Monte can recover at trial is $3,007,251, minus the

    damages done to Phase 1 roads, curbs, gutters, and parking areas.

    DATED this 15th day of December, 2021.

                                    BY THE COURT:

                                    TENA CAMPBELL
                                    United States District Judge